**Wesley D. SMITH, individually and as the administrator of the estate of his minor child, Stacey Smith, and Deanna Smith, Plaintiffs-Appellees Cross Appellants,**

v.

**STATE FARM FIRE AND CASUALTY COMPANY, Defendant-Appellant Cross Appellee.**

No. 82-3344

Summary Calendar.

United States Court of Appeals, Fifth Circuit.

Jan. 14, 1983.

Gist, Methvin, Hughes & Munsterman, DeWitt T. Methvin, Jr., Alexandria, La., for defendant-appellant cross-appellee.

Broussard, Bolton & Halcomb, Daniel E. Broussard, Jr., for plaintiffs-appellees cross-appellants.

Before CLARK, Chief Judge, POLITZ and HIGGINBOTHAM, Circuit Judges.

POLITZ, Circuit Judge:

These cross-appeals involve the propriety of statutory penalties and fees assessed against a fire insurer, and the commencement date for legal interest thereon. We affirm the award of penalties and fees, and modify and affirm the award of interest.

Wesley D. Smith, individually and on behalf of his minor child, and Deanna Smith, his wife, sued State Farm Fire and Casualty Company in state court, seeking payments under their homeowner's insurance policy for the destruction by fire of their home and its contents, together with statutory penalties and fees for arbitrary and capricious refusal to pay the claim after proper notice. State Farm removed the case to federal court.

After an extended trial, the jury returned special verdicts, pursuant to Rule 49(a) of the Federal Rules of Civil Procedure, finding that the Smiths were entitled to coverage under the policy and that State Farm was arbitrary and capricious for failing to pay. Based on these findings, the court entered judgment against State Farm for $189,477, the amount due under the policy, 12% thereof as the statutory penalty, and legal fees of $22,000. The judgment further directs interest on the principal award from date of judicial demand and, on the penalty and fees, from date of judgment. State Farm appeals the penalty and fee assessment and objects to the district court's denial of its post-trial motion. The Smiths challenge the court's allowance of interest on the penalty and fees from the date of judgment rather than judicial demand.

*Background Facts*

The Smiths' home in Leesville, Louisiana was destroyed by fire in the early evening hours of April 11, 1980. No one was in the home at the time; Mrs. Smith and their daughter were visiting relatives and Mr. Smith was enroute to his mother's camp on Toledo Bend Lake, about an hour's drive from Leesville.

Around 5:00 a.m. that morning, Mr. Smith arose and prepared breakfast, cooking a pound of bacon in an iron skillet on their electric stove. He departed for Toledo Bend Lake around 6:00 a.m., having promised to perform various repair chores for his mother. Smith worked at her camp until around 4:00 p.m., when he drove home for needed materials. Smith reached Leesville near 5:00 p.m., retrieved the materials from his garage and returned to his mother's camp. The fire was spotted by neighbors between 7:20 and 7:30 p.m. Firemen quickly responded to the alarm, but could not prevent the house from burning to the ground. Smith timely notified State Farm of his loss.

A few days later a State Farm adjuster examined the public records and found the

house encumbered by a first mortgage of $75,000 and a $50,000 second mortgage. The adjuster then met with a deputy fire marshal at the scene of the fire and learned that an iron skillet was "welded" to the rear right burner of the electric stove. The marshal informed the adjuster that witnesses first observed smoke billowing from the kitchen window, which led him to conclude that the fire originated in the kitchen. The marshal also relayed hearsay information indicating that Smith was in arrears on the first mortgage, held by First Federal Savings and Loan of Alexandria.

Shortly thereafter, Smith furnished State Farm a written statement wherein he asserted that his mortgage payments were current. The adjuster made no effort to resolve the ostensible conflict between the representations of Smith and the deputy through consultation with either Smith or First Federal, opting instead to rely on the second-hand information received from the marshal. It appears that Smith had an informal arrangement with First Federal which permitted his remittance of two payments plus a late charge on a bimonthly basis.[1]

During the course of his investigation, the adjuster learned that in January 1980, Smith had executed a $22,000 note in favor of Merchants and Farmers Bank of Leesville, secured by a second mortgage on the home. Further inquiry would have disclosed, however, that this note was given for a loan of $6,000 cash plus cancellation of an existing $16,000 note. Smith's payments on this note, as thus renewed, were current.

On April 15, 1980, the adjuster recommended that State Farm secure the services of special fire investigator Donald Zwick, for the purpose of determining the cause

and origin of the fire. Zwick did not discover any of the usual indicia of arson, such as residue of accelerant use, "spalling" or expansion of the residence's concrete slab generally caused by a flammable substance, and signs of multiple points of origin. Nor could he find remains of the silver and china reported lost. On the basis of his on-site investigation and laboratory tests, Zwick concluded that the fire began in the kitchen range, was extremely hot, and was triggered by combustion of material in the iron skillet. He also concluded that the fire could only have occurred within one or two hours after the application of intense heat to the skillet. The expert uncovered no physical evidence of arson and expressed no opinion that the fire was of incendiary origin.

Smith was a self-employed building contractor and real estate investor, with varied property and business holdings. He derived substantial, albeit fluctuating, income from his businesses, and his financial statement reflected a net worth at the time of the fire of $172,000. The record shows that Smith had designed and constructed the house, adding many improvements. Just before the fire he had completely finished the second story. At the time of the fire the property was valued at $173,000[2] and was insured for $119,400, with additional coverage for contents and loss-related expenses. Smith was awaiting the annual renewal date of the policy to increase coverage.

From April until July 1980, the adjuster assured Smith that his claim was being expeditiously processed and would be paid as soon as the paperwork was completed. Smith's request for additional living expenses, as provided for in the policy, was denied after the adjuster advised Smith that payment was imminent.

1. Smith had made arrangements with First Federal to forward the February 1980 payment in March, and to pay two installments in April covering his March and April obligations. The December 1979 and January 1980 obligations had been paid.

The evidence reflects that Smith's check covering the February 1980 payment was returned for insufficient funds, and that First Federal had caused its attorney to write a demand

letter. There is no evidence, however, that State Farm was aware of either development prior to suit being filed.

2. The expense incurred by the Smiths in acquiring and improving the property was $172,986.61. This did not include the value of Mr. Smith's labor or general contracting services inherent in the construction, remodeling and improving of the house.

Smith filed the required sworn proof of loss on June 11, 1980. Two weeks later the adjuster told Smith that no difficulties as to payment were anticipated and that processing would be completed within a day or so. Thereafter, Smith was informed that payment was being deferred because of suspicion of arson.

### Penalty and Fee Awards

State Farm argues that the jury's affirmative answer to the question whether it "was arbitrary and capricious in failing to pay ... [plaintiff's] claim" was contrary to law and the greater weight of the evidence. Our examination of the record reveals no motion by State Farm for directed verdict at the close of plaintiff's evidence, or for judgment notwithstanding the verdict at the conclusion of trial. State Farm's untimely motion for new trial makes no reference to a motion for directed verdict, but requests, *inter alia*, that the verdict be set aside for the previously delineated reasons.

### A. Sufficiency of the Evidence

■ Absent a motion for directed verdict in the district court, appellate review of a sufficiency challenge is confined to a determination "whether there was *any* evidence to support the jury's verdict, irrespective of its sufficiency, or whether plain error was committed which, if not noticed, would result in a 'manifest miscarriage of justice.'" *Coughlin v. Capitol Cement Co.,* 571 F.2d 290, 297 (5th Cir.1978) (*quoting American Lease Plans, Inc. v. Houghton Construction Co., Inc.,* 492 F.2d 34, 35 (5th Cir.1974), and *Little v. Bankers Life & Casualty Co.,* 426 F.2d 509, 511 (5th Cir.1970)) (emphasis in the original). This rule obtains whether the jury's findings are entered in the form of a general or special verdict. *See, e.g., Scheib v. Williams-McWilliams Co., Inc.,* 628 F.2d 509 (5th Cir.1980); *Coughlin v. Capitol Cement Co.; Fugitt v. Jones,* 549 F.2d 1001 (5th Cir.1977). Assuming *arguendo* the timeliness of defendant's new trial motion, we are limited by Fed.R.Civ.P. 59(a) to an inquiry whether there is an absolute absence of evidentiary support for the jury's verdict. *Bunch v. Walter,* 673 F.2d 127 (5th

Cir.1982); *Scheib v. Williams-McWilliams Co., Inc.; Coughlin v. Capitol Cement Co.* When measured against this standard, the evidence exceeds that necessary to uphold the jury's finding of arbitrary and capricious refusal to provide coverage.

■ Whether or not an insurer's failure or refusal to pay is arbitrary, capricious or without probable cause within the meaning of the statute is a question of fact to be determined in light of the facts and circumstances of a particular case. *Offshore Logistics Servs., Inc. v. Arkwright-Boston Mfgrs. Mut. Ins. Co.,* 639 F.2d 1142 (5th Cir.1981); *Cryer v. Gulf Ins. Co.,* 276 So.2d 889 (La.App. 1st Cir.1973). Here, the jury was presented with evidence reflecting the basis for State Farm's failure to pay the policy benefits. The steps taken by the adjuster in his investigation were explored, as were the obvious steps not taken.

There was evidence from which the jury could infer that State Farm's investigative procedures were inadequate, and thus failed to buttress its suspicion of arson. Zwick's findings in this regard can at best be characterized as inconclusive. *See Moore v. Millers Mut. Fire Ins. Co. of Texas,* 406 So.2d 708 (La.App. 2d Cir.1981), *writ denied,* 410 So.2d 1132 (La.1982); *Dauzat v. Amco Underwriters of Audubon Ins. Co.,* 386 So.2d 963 (La.App. 3d Cir.1980). State Farm relied on second-hand accounts of Smith's supposed dire financial straits and did not conduct an independent investigation. Aside from the initial title search, there was little or no effort to determine the current status of the mortgages or the balances thereof. The fact that the property was obviously under-insured, given the value of the many improvements made by Smith, was ignored.

### B. Validity of Judgment

■ We thus discern considerably more than the minimal quantum of evidence required to support the jury's finding of arbitrary and capricious conduct. Moreover, we believe the district court correctly imposed

statutory liability in accordance with this finding.[3]

■ Pursuant to La.R.S. 22:658, an insured is entitled to an award of 12% of the total sum due under the policy, plus reasonable attorney's fees for prosecution of the claim, where an insurer's failure or refusal to pay such sum within 60 days of a satisfactory proof of loss is deemed arbitrary, capricious, or without probable cause. This provision is penal in nature, subject to strict judicial construction, and not to be invoked merely because the insurer is cast in judgment under the policy. *Headrick v. Pennsylvania Millers Mut. Ins. Co.*, 257 La. 1101, 245 So.2d 324 (1971). *See Crawford v. Al Smith Plumbing & Heating Serv., Inc.*, 352 So.2d 669 (La.1977). Mindful of the narrow confines of this provision, we are convinced nonetheless that the penalty and fees were properly assessed. *See Boudreaux v. Fireman's Fund Ins. Co.*, 654 F.2d 447 (5th Cir.1981).

### Rule 60(b) Motion

While conceding the untimeliness of its new trial motion, State Farm petitioned the district court for review of the objections raised therein under Rule 60(b). The trial judge permitted the conversion and denied the motion on the merits without written reasons. State Farm now contends this denial constituted an abuse of discretion. Because we find no argument or supportive reasons in State Farm's appellate brief, this issue is deemed abandoned. Fed.R.App.P. 28(a)(4). *See Gaines v. CUNA Mut. Ins. Soc.*, 681 F.2d 982 (5th Cir.1982); *In re Municipal Bond Reporting Antitrust Litigation*, 672 F.2d 436 (5th Cir.1982); *Harris v. Plastics Mfg. Co.*, 617 F.2d 438 (5th Cir. 1980).

### Prejudgment Interest

■ By cross-appeal, plaintiffs argue that the district court erred in awarding interest on the statutory penalty and attor-

ney's fees from the date of judgment. Louisiana law governs the resolution of this issue. *Byrd v. Hunt Tool Shipyards, Inc.*, 650 F.2d 44 (5th Cir.), *on rehearing,* 650 F.2d 49 (1981) (per curiam). *See Union Bank of Benton, Ark. v. First Nat'l Bank in Mount Pleasant, Texas*, 677 F.2d 1074 (5th Cir.1982).

As we observed in *Degelos Bros. Grain Corp. v. Fireman's Fund Ins. Co. of Texas*, 498 F.2d 1238 (5th Cir.1974), La.R.S. 22:658 is silent as to the date from which interest must be computed. In *Calhoun v. Star Ins. Co. of America*, 159 La. 77, 105 So. 231 (1925), however, the Louisiana Supreme Court, without comment, allowed recovery of interest on penalties and attorney's fees from the date of either the fire or judicial demand. Various state appellate courts have likewise approved assessments of interest upon such awards from date of judicial demand rather than date of judgment. *See, e.g., Negem v. Paul Revere Life Ins. Co.*, 366 So.2d 194 (La.App. 3d Cir.1978) (La.R.S. 22:657, similar fee and penalty provision covering arbitrary denial of benefits under health and accident policies); *Baghramain v. MFA Mut. Ins. Co.*, 315 So.2d 849 (La.App. 3d Cir.), *writ denied,* 320 So.2d 207 (La.1975); *Roberts v. Houston Fire & Cas. Co.*, 168 So.2d 457 (La.App. 3d Cir.1964) (*citing Calhoun v. Star Ins. Co. of America*); *Chambers v. North British & Mercantile Ins. Co.*, 175 So. 95 (La.App. 1st Cir. 1937).

Perceiving the persuasive weight of Louisiana authority to so mandate, we conclude that interest on the penalty and fee awards should commence as of the date of judicial demand. The judgment of the district court is modified in that respect and, as modified, is in all respects AFFIRMED.

---

3. *See Traders and General Ins. Co. v. Mallitz*, 315 F.2d 171 (5th Cir.1963) (absence of motion for directed verdict, while foreclosing review of sufficiency of the evidence, does not prevent determination of whether proper judgment was entered upon a special verdict). *Accord* 9 Wright & Miller, Federal Practice and Procedure, § 2536 (1971).